**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER<br><br>    *Plaintiff*,<br><br>v.<br><br>ACI PAYMENTS, INC., ACI WORLDWIDE CORP., ACI WORLDWIDE, INC.<br><br>    *Defendants*. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

Plaintiff Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), by and through its undersigned attorneys, brings this Complaint against Defendants ACI Payments, Inc., ACI Worldwide Corp., and ACI Worldwide, Inc. (collectively "ACI") and alleges as follows:

### <u>INTRODUCTION</u>

1.     Nationstar is a mortgage servicer that services residential loans throughout the country.

2.     ACI is a third-party electronic payment processing vendor for many of the largest mortgage servicers in the United States, including Nationstar.

3.     On or about April 23, 2021, ACI and/or its agents sent instructions to depository institutions of Nationstar's customers that initiated ACH debits for multiple monthly mortgage payments in hundreds of thousands of Nationstar's customers' accounts without Nationstar's prior knowledge or authorization (the "Incident").

4.     Upon information and belief, the Incident occurred because ACI and/or its agents misused Nationstar's actual nonpublic personal customer information to conduct quality assurance ("QA") testing, even though such use by ACI and/or its agents was not authorized by Nationstar.

5.      Nationstar neither knew about nor authorized ACI's and/or its agents' use of its nonpublic personal customer information for this QA testing.

6.      Upon information and belief, ACI's and/or its agents' testing was conducted in a live production environment, instead of a walled-off testing environment.

7.      Nationstar neither knew about nor authorized ACI's and/or its agents' use of its nonpublic personal customer information for QA testing in a live production environment.

8.      Notwithstanding Nationstar's substantial efforts to mitigate the customer impact of the Incident, the Incident made media headlines nationwide—damaging Nationstar's reputation and upsetting many of its customers.  Upon information and belief, the Incident caused some of Nationstar's customers to incur overdraft and/or insufficient funds fees on their bank accounts, while other Nationstar customers' depository institutions placed temporary account freezes on their accounts.

9.      The Incident resulted in the filing of ten putative class actions (across eight different states) against Nationstar, which Nationstar incurred legal fees to defend: (1) *Padalecki v. Nationstar Mortgage LLC*, D. Nev., Case No. 2:21-cv-938; (2) *Jones v. Nationstar Mortgage LLC*, N.D. Ill., Case No. 1:21-cv-3217; (3) *Keil v. Nationstar Mortgage LLC*, N.D.N.Y., Case No. 6:21-cv-697; (4) *Dugan v. Nationstar Mortgage LLC*, M.D.N.C., Case No. 1:21-cv-341; (5) *Miller v. Nationstar Mortgage LLC*, M.D. Fla., Case No. 8:21-cv-1349; (6) *Dehner v. Nationstar Mortgage LLC*, E.D. Mich., Case No. 1:21-cv-11460; (7) *Devereaux v. Nationstar Mortgage LLC, et al.*, C.D. Cal., Case No. 5:21-cv-873; (8) *Friday v. Nationstar Mortgage LLC*, W.D.N.C., Case No. 1:21-cv-165; (9) *Stovall v. Nationstar Mortgage LLC,* N.D. Tex., Case No. 3:21-cv-02735; and (10) *Thompson v. Nationstar Mortgage LLC,* D. Nev., Case No. 2:21-cv-00720.  The Incident also resulted in the filing of at least two individual lawsuits, which Nationstar incurred legal fees to defend: (1) *Camarillo v. Nationstar Mortgage LLC,* C.D. Cal., Case No. 5:21-cv-750 and

(2) *Staeheli v. Nationstar Mortgage LLC,* Minnesota District Court for Ramsey County, Case No. 62-CO-21-1159.  The class actions and individual actions related to the Incident, including but not limited to those identified here, are referred to collectively as the "Lawsuits."

10.      The Incident also resulted in ACI paying a $25 million civil money penalty following an investigation by the Consumer Financial Protection Bureau (the "CFPB").  Although the CFPB did not fine Nationstar itself in connection with the Incident, the CFPB's June 27, 2023 press release regarding the fine referenced "Mr. Cooper", the current name under which Nationstar does business, and discussed the impact on its customers. This is but one part of the reputational harm inflicted upon Nationstar by the Incident and ACI's role in the Incident.

11.      In addition to the reputational damage and costs to defend the Lawsuits, Nationstar also incurred costs and expenses to: (a) retain legal counsel to respond to the Incident, (b) pay customers in connection with claims and complaints arising from the Incident, (c) reimburse customers for non-sufficient fund/overdraft fees in connection with the Incident, (d) issue reimbursement checks to customers in connection with the Incident, (e) respond to hundreds of qualified written requests submitted by customers in connection with the Incident, (f) respond to over 1,000 social media posts by customers in connection with the Incident, (g) prepare and deliver notices, non-regular correspondence, and emails to customers in connection with the Incident, (h) conduct additional customer care calls made in response to the Incident, (i) pay call center and account services employees for time spent responding to complaints and inquiries regarding the Incident, and (j) pay compliance employees for time spent responding to regulatory inquiries.

12.      Nationstar likewise has suffered damages to its brand and reputation because of the Incident.

13.      Nationstar brings this lawsuit to obtain redress from ACI for the damage that it caused to Nationstar and its business.

## THE PARTIES

14.     Nationstar is a Delaware limited liability company with its principal place of business in Coppell, Texas. Mr. Cooper is the current name under which Nationstar does business. Nationstar's members are located in Delaware, California, Michigan, Connecticut, Ohio, Puerto Rico, and outside of the United States.

15.     ACI Payments, Inc. is a Delaware corporation with its principal place of business in Elkhorn, Nebraska.

16.     ACI Worldwide Corp. is a Nebraska corporation with its principal place of business in Elkhorn, Nebraska.

17.     ACI Worldwide, Inc. is a Delaware corporation with its principal place of business in Miami, FL.

## JURISDICTION AND VENUE

18.     This is a civil action for contractual indemnification and breach of contract under Colorado law; misappropriation of confidential information, tortious interference with existing and prospective business relationships, ordinary negligence, and gross negligence under Texas law; violations of the Texas Theft and Liability Act, Texas Uniform Trade Secrets Act, Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.; and violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq*.

19.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Nationstar's state and common law claims under 28 U.S.C. § 1367(a) because they are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy.

20.     This Court has personal jurisdiction over ACI because ACI solicits and does business in Texas. Many of the acts described in this Complaint supporting Nationstar's claims

occurred in Texas, including but not limited to ACI's predecessor, Speedpay Inc., entering into the underlying agreement with Nationstar that ACI breached in the course of the Incident.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), (b)(2) and (b)(3) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred within this judicial district, and ACI resides and is subject to personal jurisdiction in this judicial district under 28 U.S.C. § 1391(c)(2) .

## FACTUAL BACKGROUND

**A.    Nationstar's Relationship with ACI**

22.      Nationstar is one of the nation's largest mortgage servicers for residential home loans.  As a mortgage servicer, Nationstar collects payments, fees, and other amounts owed by homeowners to loan owners.

23.     Nationstar allows borrowers to authorize Nationstar to initiate automatic recurring debit entries once per month, equal to the required monthly payment for a borrower's loan.

24.     This process is generally initiated through an Automatic Clearing House ("ACH") debit transaction from a borrower's financial institution.

25.     Nationstar contracted with Speedpay Inc. ("Speedpay"), a predecessor to ACI, to be Nationstar's third-party electronic payment processing vendor responsible for processing and managing borrowers' ACH mortgage payments.

26.     Specifically, on June 4, 2009, Nationstar and Speedpay entered into the Speedpay Master Services Agreement Terms and Conditions (as amended, the "Speedpay Agreement").

27.     Under the Speedpay Agreement, Speedpay agreed to act as Nationstar's electronic payment processing vendor responsible for processing and managing borrowers' ACH mortgage payments.  *See generally*, Speedpay Agreement.

28.     Speedpay processed and managed the ACH mortgage payments of Nationstar's borrowers using the Western Union Speedpay payment service (the "Service").  *See id*. at ¶ 1 and Schedule A to Speedpay Agreement, ¶ 1.

29.     Upon information and belief, ACI acquired Speedpay through a transaction that closed on or about May 9, 2019.

30.     Speedpay has now rebranded as ACI.

31.     Thus, upon information and belief, at the time of the Incident, ACI had acquired Speedpay from Western Union and had assumed Speedpay's contractual rights and obligations under the Speedpay Agreement and is therefore the proper party to this lawsuit.

**B.     ACI Causes Irregular ACH Activity in Nationstar's Customers' Accounts**

32.     On or about April 23, 2021, ACI and/or its agents, without Nationstar's knowledge or authorization, submitted hundreds of thousands of unauthorized ACH debit requests to the bank accounts of Nationstar's customers.

33.     Upon information and belief, many bank accounts of Nationstar's customers received multiple ACH debit requests from ACI, equivalent to multiple monthly mortgage payments.

34.     Upon information and belief, the Incident was the direct result of ACI and/or its agents using the nonpublic personal information of Nationstar's customers to conduct QA testing of ACI's Speedpay software.

35.     Upon information and belief, the testing was conducted in a live production environment, instead of a walled-off testing environment.

36.     By using Nationstar's nonpublic personal customer information in a live production environment to conduct QA testing, ACI and/or its agents used Nationstar's confidential information for a purpose not contemplated by the Speedpay Agreement.

37.     In using Nationstar's nonpublic personal customer information in a live production environment to conduct QA testing, ACI and/or its agents acted recklessly and with gross negligence.

38.     The QA testing was done without Nationstar's knowledge or authorization.

39.     Upon becoming aware that ACI had debited the bank accounts of hundreds of thousands of Nationstar's customers' for multiple monthly mortgage payments, Nationstar immediately reported the error to its customers' banks and worked with ACI and its customers' banks to provide ACH credits that would reverse the irregular debits and fees that were charged.

40.     Upon information and belief, the incorrect debits were reversed for all of Nationstar's customers affected by the Incident.

## C.     The Speedpay Agreement

41.     The Speedpay Agreement requires ACI to "use commercially reasonable efforts to ensure that the Resources [materials and services] will accurately and correctly perform the functions required to make Customer Payments using the Service."  Speedpay Agreement at Schedule A to Speedpay Agreement, ¶ 2(A).[1]

42.     The Speedpay Agreement also requires ACI to indemnify and hold Nationstar harmless from and against all third-party claims resulting solely from ACI's breach of the Speedpay Agreement.  *Id*. at ¶ 6.

43.     The Speedpay Agreement was amended, modified, and supplemented from time to time through November 2019.

44.     On June 22, 2016, the parties entered into an amendment ("Amendment No. 4") to the Speedpay Agreement, which, among other things, modified the Confidential Information section of the Speedpay Agreement.  *Id*. at Amendment No. 4, ¶¶ 1, 3 and Ex. 1 to Amend. No. 4.

---

[1] Amendment No. 2 deleted and replaced the Schedule A attached to the June 4, 2009 Speedpay Agreement but this language remained in the Schedule A to Amendment No. 2.

45.     Pursuant to Amendment No. 4, ACI agreed not to use Nationstar's Confidential Information "for any purpose except as contemplated by the [Speedpay] Agreement," without Nationstar's prior written consent.  *See* Ex. 1 to Amend. No. 4.

46.     Pursuant to Amendment No. 4, "Confidential Information" is defined to include "all forms and types of customer information" as well as "Personal Information," which is in turn defined to include "nonpublic personal information . . . about customers."  *Id.*

47.     In the event that ACI used Nationstar's confidential information in an unauthorized manner, Nationstar would be "entitled to all other remedies available at law or equity including injunctive relief."  *Id*. at (d)(vi).

48.     ACI's use of Nationstar's confidential information in the Incident and leading up to the Incident was not a purpose contemplated by the Speedpay Agreement.

**D.     Damage to Nationstar As A Result of the Incident**

49.     Although Nationstar and ACI both acted quickly to limit the impact of the Incident on Nationstar's customers, even with those efforts, the Incident impacted many Nationstar customers, leading to widespread negative consequences for Nationstar.

50.     The Incident made media headlines nationwide and prompted a widely circulated press release from the CFPB, damaging Nationstar's brand and reputation and resulting in the loss of customer goodwill.

51.     Upon information and belief, the Incident caused some of Nationstar's customers to incur overdraft and/or insufficient funds fees on their bank accounts, while other Nationstar customers' depository institutions placed temporary account freezes on their accounts.

52.     The Incident resulted in a drastic increase in telephonic, electronic, and written communications from Nationstar customers seeking further explanations for or lodging complaints about the Incident, which required Nationstar to devote considerable resources to address.

53.     In addition, Nationstar proactively sent notices, non-regular correspondence, and emails to customers in connection with the Incident to explain what happened and what was being done to fix it.

54.     The Incident also resulted in the filing of the Lawsuits.

55.     In addition to the damage to Nationstar's reputation and brand, and the costs to defend the Lawsuits, Nationstar also incurred costs and expenses including but not limited to:

(a)   retain legal counsel to respond to the Incident,

(b)   pay customers in connection with claims and complaints arising from the Incident,

(c)   reimburse customers for non-sufficient fund/overdraft fees in connection with the Incident,

(d)   issue reimbursement checks to customers in connection with the Incident,

(e)   respond to hundreds of qualified written requests submitted by customers in connection with the Incident,

(f)   respond to over 1,000 social media posts by customers in connection with the Incident,

(g)   prepare and deliver notices, non-regular correspondence, and emails to customers in connection with the Incident,

(h)   conduct additional customer care calls made in response to the Incident,

(i)   pay call center and account services employees for time spent responding to complaints and inquiries regarding the Incident, and

(j)   pay compliance employees for time spent responding to regulatory inquiries.

56.     Nationstar is entitled to compensation from ACI for these damages.

57.     On April 19, 2023, the parties entered into a Tolling Agreement tolling the statute of limitations on all potential claims arising out of or concerning the Incident through October 31, 2023.

## CAUSES OF ACTION

### Count I: Contractual Indemnification

58.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

59.    Nationstar and Speedpay entered into the Speedpay Agreement.  ACI assumed Speedpay's rights and obligations under the Speedpay Agreement with Nationstar when it acquired Speedpay on or about May 9, 2019.

60.    The Speedpay Agreement clearly and unequivocally requires ACI to "indemnify and hold harmless [Nationstar] and its agents, employees, officers, directors, affiliates, subsidiaries, successors and assigns from and against all third-party claims resulting solely from [ACI's] breach" of the Speedpay Agreement.  Speedpay Agreement, ¶ 6.

61.    ACI breached the Speedpay Agreement by failing to use commercially reasonable efforts to ensure that the Services that it provided accurately and correctly performed the functions required to make customer payments as intended—thereby causing the Incident.

62.    For example, it was not commercially reasonable for ACI and/or its agents to conduct QA testing with Nationstar's nonpublic personal customer information in a live production environment, as opposed to a walled-off testing environment.

63.    ACI also breached the confidentiality provisions of the Speedpay Agreement by using Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment without Nationstar's prior written consent, thereby causing the Incident. *See* Speedpay Agreement, Ex. 1 to Amend. No. 4.

64.    ACI also breached the confidentiality provision of the Speedpay Agreement by failing to maintain adequate electronic and procedural safeguards to guard confidential information.  *See id.*

65.     The Speedpay Agreement does not contemplate that Nationstar's nonpublic personal customer information would be used by ACI and/or its agents for QA testing in a live production environment, and Nationstar did not consent to the use of its confidential customer information in this manner.

66.     ACI's breach of the Speedpay Agreement resulted in Nationstar having to defend itself against third-party claims asserted by customers in the Lawsuits, as set forth earlier in the Complaint.

67.     ACI's breach of the Speedpay Agreement also resulted in Nationstar receiving additional third-party claims from customers outside of the Lawsuits.

68.     Nationstar demanded that ACI indemnify it against these third-party claims, but it failed to do so.

69.     For these reasons, Nationstar is entitled to contractual indemnification from ACI for damages associated with third-party claims that Nationstar incurred as a result of the Incident.

### Count II: Declaratory Judgment Affirming ACI's Indemnification Obligations to Nationstar

70.     Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

71.     An actual controversy exists between Nationstar and ACI as to (1) whether ACI is required to indemnify Nationstar, under the Speedpay Agreement, for the third-party claims Nationstar faced as a result of the Incident, and (2) whether ACI has complied with its contractual indemnification obligations.

72.     Nationstar is entitled to an appropriate declaration that ACI is required to indemnify it against third-party claims arising out of the Incident.

73.     Nationstar is also entitled to an appropriate declaration that ACI has breached its contractual indemnification obligations by failing to indemnify it against third-party claims arising out of the Incident.

### Count III: Breach of Contract

74.     Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

75.     Nationstar and Speedpay entered into the Speedpay Agreement.  ACI assumed Speedpay's rights and obligations under the Speedpay Agreement with Nationstar when it acquired Speedpay on or about May 9, 2019.  Nationstar fully complied with its obligations under the Speedpay Agreement.

76.     However, ACI breached the Speedpay Agreement by its conduct described herein, and in doing so, acted with gross negligence.  *See* Speedpay Agreement, ¶ 6 and Ex. 1 to Amend. No. 4.

77.     ACI breached the Speedpay Agreement by failing to use commercially reasonable efforts to ensure that the Services that it provided accurately and correctly performed the functions required to make customer payments as intended—thereby causing the Incident.

78.     For example, it was not commercially reasonable for ACI and/or its agents to conduct QA testing with Nationstar's nonpublic personal customer information in a live production environment, as opposed to a walled-off testing environment.

79.     ACI also breached the confidentiality provisions of the Speedpay Agreement by using Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment without Nationstar's prior written consent, thereby causing the Incident. *See* Ex. 1 to Amend. No. 4.

80.     ACI also breached the confidentiality provision of the Speedpay Agreement by failing to maintain adequate electronic and procedural safeguards to guard confidential information. *See id.*

81.     The Speedpay Agreement does not contemplate that Nationstar's nonpublic personal customer information would be used by ACI and/or its agents for QA testing in a live production environment, and Nationstar did not consent to the use of its nonpublic personal customer information in this manner.

82.     It was grossly negligent and reckless for ACI and/or its agents to conduct QA testing with Nationstar's nonpublic personal customer information in a live production environment in violation of the Speedpay Agreement.

83.     ACI's and/or its agents' conduct in breaching the Speedpay Agreement was willful and wanton.

84.     ACI's gross negligence, reckless actions, and willful and wanton conduct, caused the Incident, which resulted in widespread damages for Nationstar.

85.     As a direct and proximate result of ACI's material breach of the Speedpay Agreement, Nationstar has suffered and continues to suffer damages in an amount to be determined at trial.

## Count IV: Breach of The Implied Duty
## of Good Faith and Fair Dealing

86.     Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

87.     Nationstar and Speedpay entered into the Speedpay Agreement. ACI assumed Speedpay's rights and obligations under the Speedpay Agreement with Nationstar when it acquired Speedpay on or about May 9, 2019. Nationstar fully complied with its obligations under the Speedpay Agreement.

88.    Every contract in Colorado includes an implied duty of good faith and fair dealing.

89.    The covenant may be relied upon when the manner of performance under a specific contract term allows for discretion on the part of either party.

90.    ACI breached the implied duty of good faith and fair dealing by failing to ensure that the Services that it provided accurately and correctly performed the functions required to make customer payments as intended—thereby causing the Incident.

91.    For example, ACI did not act in good faith when it and/or its agents conducted QA testing with Nationstar's nonpublic personal customer information in a live production environment, as opposed to a walled-off testing environment, without Nationstar's knowledge or consent.

92.    As a direct and proximate result of ACI's breach of the implied covenant of good faith and fair dealing, Nationstar has suffered and continues to suffer damages in an amount to be determined at trial.

### Count V: Defend Trade Secrets Act of 2016
### (18 U.S.C. § 1836 *et seq.*)

93.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

94.    Nationstar took reasonable and substantial measures to protect its customers' nonpublic personal information, making that information a trade secret.

95.    By way of example, Nationstar negotiated robust confidentiality terms in the Speedpay Agreement as one means of protecting customer nonpublic personal information.

96.    Pursuant to the Speedpay Agreement, Nationstar permitted ACI some access to its customers' confidential information with ACI to allow it to carry out these duties.

97.    However, ACI breached its duty to Nationstar to maintain the secrecy of this information by, unlawfully and without Nationstar's authorization, assuming and exercising

control over the confidential information of Nationstar's customers in a manner that was inconsistent with Nationstar's right of possession.

98.     Specifically, ACI and/or its agents used the confidential information of Nationstar's customers to conduct QA testing in a live production environment, which resulted in irregular ACH activity in the bank accounts of hundreds of thousands of Nationstar's customers.

99.     ACI's use of nonpublic personal customer information was improper and in breach of the confidentiality provisions contemplated by the Speedpay Agreement.

100.    As a direct and proximate result of ACI's misappropriation of Nationstar's customers' confidential information, Nationstar has suffered and continues to suffer damages in an amount to be determined at trial.

**Count VI: Violation of Texas Uniform Trade Secrets Act**
**(Misappropriation of Confidential Information)**
**(Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq.*)**

101.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

102.    As Nationstar's third-party electronic payment processing vendor responsible for processing and managing borrowers' ACH mortgage payments, Nationstar permitted ACI some access to its customers' confidential information with ACI to allow it to carry out these duties.

103.    However, ACI breached its confidential relationship with Nationstar by unlawfully and without Nationstar's authorization, assuming and exercising control over the confidential information of Nationstar's customers in a manner that was inconsistent with Nationstar's right of possession.

104.    Specifically, ACI and/or its agents used the confidential information of Nationstar's customers to conduct QA testing in a live production environment, which resulted in irregular ACH activity in the bank accounts of hundreds of thousands of Nationstar's customers.

105.    ACI's conduct violated the Texas Uniform Trade Secrets Act, § 134A.001 *et seq*. In the alternative, the same conduct constitutes common law misappropriation of Nationstar's customers' confidential information.

106.    As a direct and proximate result of ACI's conduct, Nationstar has suffered and continues to suffer damages in an amount to be determined at trial.

**Count VII: Tortious Interference with An Existing Contract**

107.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

108.    Nationstar and Speedpay entered into the Speedpay Agreement.  ACI assumed Speedpay's rights and obligations under the Speedpay Agreement with Nationstar when it acquired Speedpay on or about May 9, 2019.

109.    As described above, ACI and/or its agents used Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment, resulting in the Incident.

110.    ACI had actual knowledge, or at the very least, knowledge of facts that would lead a reasonable person to conclude that Nationstar had contracts with its borrowers, to which ACI was not a party, that governed Nationstar's ability to collect funds from its borrowers. *See* Schedule A to Speedpay Agreement, ¶ 1 ("[Nationstar] may receive customer payments ("Customer Payments") in U.S. funds . . . via the Service."); *see also Id.* at 2(A) ("[ACI] will provide, as applicable, the materials and services ("Resources") necessary to process Customer Payments through the Service . . .").[2]

---

[2] Amendment No. 2 deleted and replaced the Schedule A attached to the June 4, 2009 Speedpay Agreement but this language remained in the Schedule A to Amendment No. 2.

111.    ACI willfully and intentionally used Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment which caused the Incident that interfered with Nationstar's existing contracts with its borrowers.

112.    ACI's  willful and intentional actions proximately caused Nationstar's injury in the form of actual harm as set forth in the paragraphs above.

### Count VIII: Common Law Negligence

113.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

114.    By accessing Nationstar's nonpublic personal customer information, ACI assumed a duty to exercise reasonable care in using that information.

115.    As described above, ACI and/or its agents used Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment, resulting in the Incident.

116.    ACI and/or its agents breached their duty of care when they used nonpublic personal customer information to conduct QA Testing in a live production environment.

117.    To the extent any negligent acts were conduct by ACI's agents, ACI was negligent in hiring such agents.

118.    To the extent any negligent acts were conducted by ACI's agent, ACI ratified such negligence through its continued use of such agents.

119.    Nationstar sustained significant damages as a direct and proximate result of ACI and/or its agents' negligent conduct, including but not limited to the damages set forth in the paragraphs above.

## Count IX: Gross Negligence
## (Tex. Civ. Prac. & Rem. Code § 41.001)

120.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

121.    By accessing Nationstar's nonpublic personal customer information, ACI assumed a duty to exercise reasonable care in using that information.

122.    As described above, ACI and/or its agents used Nationstar's nonpublic personal customer information to conduct QA testing in a live production environment, resulting in the Incident.

123.    ACI and/or its agents engaged in an extreme degree of risk when they used nonpublic personal customer information to conduct QA Testing in a live production environment.

124.    ACI had actual awareness of the risk involved. Specifically, ACI knew that that Nationstar and its customers could suffer serious financial and reputational harm when using actual customer data in a live production environment.

125.    ACI acknowledged the risk of using actual customer data when it agreed to the provisions and amendments of the Speedpay Agreement.

126.    Despite knowing the risks of using actual customer data in a live production environment, ACI and/or its agents disregarded them when they used the nonpublic personal customer information in the QA Testing.

127.    To the extent any grossly negligent acts were conduct by ACI's agents, ACI was grossly negligent in hiring such agents.

128.    To the extent any grossly negligent acts were conducted by ACI's agent, ACI ratified such negligence through its continued use of such agents.

129.     Nationstar sustained significant damages as a direct and proximate result of ACI and/or its agents' grossly negligent conduct, including but not limited to the damages set forth in the paragraphs above.

130.     Nationstar is entitled to punitive damages as a result of ACI and/or its agents' grossly negligent conduct.

### Count X: Violation of the Texas Theft and Liability Act
### (Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq.*)

131.     Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

132.     Nationstar possessed and was entitled to possess its customers' nonpublic personal information, which was necessary to process and manage borrowers' ACH mortgage payments.

133.     ACI unlawfully appropriated Nationstar's nonpublic personal customer information by using it to conduct QA testing in a live production environment, thereby causing the Incident.

134.     Nationstar neither knew about, nor authorized, nor provided effective consent for ACI to use its nonpublic personal customer information for this QA testing.

135.     ACI unlawfully appropriated Nationstar's nonpublic personal customer information in violation of Tex. Penal Code § 31.03(b)(1).

136.     Upon information and belief, ACI unlawfully appropriated Nationstar's nonpublic personal customer information with the intent to deprive Nationstar and its customers of this confidential information.

137.     Nationstar sustained significant damages as direct and proximate result of ACI's theft of its customers' nonpublic personal customer information, including but not limited to the damages set forth in the preceding paragraphs.

138.    Pursuant to Texas Civil Practice and Remedies Code Section 134.005, Nationstar is entitled to its actual damages, $1,000 in statutory damages, and reasonable attorney's fees and costs.

**Count XI: Violation of the Computer Fraud and Abuse Act
(18 U.S.C. §§ 1030 *et seq.*)**

139.    Nationstar incorporates the preceding paragraphs of the Complaint by reference as if fully set forth herein.

140.    Nationstar's computers and servers are protected computers and used in interstate commerce by Nationstar, a financial institution, to conduct business in many different states.

141.    ACI's computers and servers are protected computers and used in interstate commerce by ACI and for, among others, Nationstar, a financial institution, to conduct business in many different states.

142.    Both Nationstar's computers and servers and ACI's computers and servers are connected to the internet.

143.    ACI and/or its agents, without authorization or in excess of their authorization, intentionally accessed a protected computer and thereby obtained confidential and protected information of Nationstar.

144.    ACI and/or its agents then used that information for a purposes that they were not authorized to use it for by conducting the QA Testing in a live production environment.

145.    ACI and/or its agents engaged in all of the above-described acts with a knowing or intentional state of mind.

146.    As a result of ACI's and/or its agents' conduct, Nationstar has incurred substantial damages in excess of $5,000 in responding to the offense as further described in the paragraphs above.

## **ATTORNEYS' FEES**

Nationstar is entitled to the collection of attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.001 which provides, "a person may recover reasonable attorney's fees from an individual . . . in addition to the amount of a valid claim and costs, if the claim is for . . . (8) an oral or written contract."

## **JURY DEMAND**

Nationstar hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

Nationstar respectfully requests that the Court enter judgment in its favor and against ACI as follows:

A. holding ACI liable under the causes of actions asserted above and for the associated damages;

B. declaring that ACI owes indemnity to Nationstar under the Speedpay Agreement for future third-party claims due to the Incident;

C. punitive damages;

D. statutory damages pursuant to Tex. Civ. Prac. & Rem. Code § 134.005(b);

E. damages pursuant to Tex. Civ. Prac. & Rem. Code § 134A.004(a).

F. pre- and post-judgment interest as allowed by law;

G. an award of Nationstar's reasonable attorneys' fees and the costs of this action

H. for such other and further relief as the Court deems just and proper.

Dated:  September 19, 2023      Respectfully submitted,

         /s/ *Justin Opitz*
         **Justin Opitz**, SBN: 24051140
         jopitz@mcguirewoods.com
         **MCGUIREWOODS LLP**
         2000 McKinney Avenue, Suite 1400
         Dallas, Texas 75201
         Telephone: 214.932.6400
         Facsimile:  214.932.6499

         Brian A. Kahn (*pro hac vice pending*)
         North Carolina Bar No. 29291
         R. Locke Beatty (*pro hac vice pending*)
         North Carolina Bar No. 38020
         **MCGUIREWOODS LLP**
         201 North Tryon Street, Suite 3000
         Charlotte, NC 28202-2146
         Tel: (704) 343-2038
         Fax: (704) 444-8783
         bkahn@mcguirewoods.com
         lbeatty@mcguirewoods.com

         **ATTORNEYS FOR PLAINTIFF**
         **NATIONSTAR MORTGAGE LLC**